MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
ALBERTO PAREJA, LORENZO
ESPINDOLA, and RIGOBERTO JUAREZ
GALINDO, *individually and on behalf of*
*others similarly situated,*

|  |  |
|---|---|
| *Plaintiffs*, | **COMPLAINT** |
|  | |
| -against- | **COLLECTIVE ACTION** |
|  | **UNDER 29 U.S.C. § 216(b)** |
| THAI NUM SOUP INC. (d/b/a THAI SOUP) | |
| and WACHARA NITTAYAROT (A.K.A. | **ECF Case** |
| JAKI), | |
|  | |
| *Defendants.* | |

-----------------------------------------------------X

Plaintiffs Alberto Pareja ("Plaintiff Pareja" or "Mr. Pareja"), Lorenzo Espindola ("Plaintiff Espindola" or "Mr. Espindola") and Rigoberto Juarez Galindo ("Plaintiff Juarez" or "Mr. Juarez"), individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Thai Num Soup Inc. (d/b/a Thai Soup) ("Defendant Corporation") and Wachara Nittayarot (a.k.a. Jaki) ("Individual Defendant") (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Defendants Thai Num Soup Inc. (d/b/a Thai Soup) and Wachara Nittayarot (a.k.a. Jaki).

2.     Defendants own, operate, or control a Thai take-out/delivery business located at 166 E 118th St., New York, NY 10035 under the name Thai Soup.

3.     Upon information and belief, Individual Defendant Wachara Nittayarot (a.k.a. Jaki) serves or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operates or operated the take-out/delivery business as a joint or unified enterprise.

4.     Plaintiffs Pareja and Juarez were employed as delivery workers and Plaintiff Espindola was employed as a food preparer.

5.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate overtime compensation for the hours that they worked.

6.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs (and similarly situated employees) appropriately for any hours worked over 40 in a week.

7.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

8.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-1.6 (herein the

"Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

10.    Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

12.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Thai take-out/delivery business located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

13.    Plaintiff Alberto Pareja ("Plaintiff Pareja" or "Mr. Pareja") is an adult individual residing in New York County, New York. Plaintiff Pareja was employed by Defendants from approximately June 2016 until on or about June 11, 2017.

14.    Plaintiff Lorenzo Espindola ("Plaintiff Espindola" or "Mr. Espindola") is an adult individual residing in Bronx County, New York. Plaintiff Espindola was employed by Defendants from approximately May 25, 2017 until on or about June 13, 2017.

15.     Plaintiff Rigoberto Juarez Galindo ("Plaintiff Juarez" or "Mr. Juarez") is an adult individual residing in Bronx County, New York. Plaintiff Juarez was employed by Defendants from approximately November 21, 2015 until on or about April 15, 2016, and from approximately September 5, 2016 until on or about June 18, 2017.

*Defendants*

16.     At all relevant times, Defendants own, operate, or control a Thai take-out/delivery business located at 166 E 118th St., New York, NY 10035 under the name "Thai Soup".

17.     Upon information and belief Thai Num Soup Inc. (Defendant Corporation) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, Defendant Corporation has its principal place of business at 82 W 105th Street, Apt. 3E, New York, NY, 10025.

18.     Defendant Wachara Nittayarot (a.k.a. Jaki) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

19.     Defendant Wachara Nittayarot (a.k.a. Jaki) is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation.

20.     Defendant Wachara Nittayarot (a.k.a. Jaki) possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation.

21.     Defendant Wachara Nittayarot (a.k.a. Jaki) determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

22.     Defendants operate a Thai take-out/delivery business located in East Harlem in New York City.

23.     The Individual Defendant Wachara Nittayarot (a.k.a. Jaki) possesses operational control over Defendant Corporation, possesses ownership interests in Defendant Corporation, and controls significant functions of Defendant Corporation.

24.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over employees.

25.     Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

26.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

27.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

28.     Upon information and belief, Individual Defendant Wachara Nittayarot (a.k.a. Jaki) operates or operated Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e) operating Defendant Corporation for his own benefit and maintaining control over it as a closed corporation,

f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests; and,

h) Other actions evincing a failure to adhere to the corporate form.

29. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

30. In each year from 2015 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

31. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the

take-out/delivery business on a daily basis were goods produced outside of the State of New York.

### Individual Plaintiffs

32.     Plaintiffs are former employees of Defendants who were ostensibly employed as delivery workers, except for Plaintiff Espindola who was employed as a food preparer.

33.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Alberto Pareja

34.     Plaintiff Pareja was employed by Defendants from approximately June 2016 until on or about June 11, 2017.

35.     Defendants employed Plaintiff Pareja as a delivery worker.

36.     Plaintiff Pareja regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

37.     Plaintiff Pareja's work duties required neither discretion nor independent judgment.

38.     Throughout his employment with Defendants, Plaintiff Pareja regularly worked in excess of 40 hours per week.

39.     From approximately June 2016 until on or about June 11, 2017, Plaintiff Pareja worked from approximately 10:45 a.m. until on or about 9:00 p.m. four days a week, from approximately 1:45 p.m. until on or about 11:30 p.m. on Saturdays and from approximately 3:45 p.m. until on or about 11:30 p.m. on Sundays (typically 58.5 hours per week).

40.     Throughout his employment with defendants, Plaintiff Pareja was paid his wages in cash.

41.    From approximately June 2016 until on or about December 2016, Defendants paid Plaintiff Pareja $9.50 per hour.

42.    From approximately January 2017 until on or about May 2017, Defendants paid Plaintiff Pareja $10.00 per hour.

43.    During the month of June 2017, Defendants paid Plaintiff Pareja $11.00 per hour.

44.    Plaintiff Pareja's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

45.    In fact, Defendants required Plaintiff Pareja to start working 15 minutes prior to his scheduled start time each day, and did not compensate him for the additional time he worked.

46.    Similarly, defendants required Plaintiff Pareja to work 1 to 2 hours past his scheduled departure time every two weeks and did not pay him for the additional time he worked.

47.    Plaintiff Pareja was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

48.    Instead, Defendants required Plaintiff Pareja to sign a false statement of hours worked in order to get paid.

49.    Further, Defendants did not provide Plaintiff Pareja with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

50.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Pareja regarding overtime and wages under the FLSA and NYLL.

51.    Defendants never provided Plaintiff Pareja with each payment of wages a statement of wages, as required by NYLL 195(3).

52.    Defendants did not give any notice to Plaintiff Pareja, in English and in Spanish (Plaintiff Pareja's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

53.    Defendants required Plaintiff Pareja to purchase "tools of the trade" with his own funds—including four vests, two chains, three locks, two helmets, three bicycles and sets of lights.

*Plaintiff Lorenzo Espindola*

54.    Plaintiff Espindola was employed by Defendants from approximately May 25, 2017 until on or about June 13, 2017.

55.    Defendants employed Plaintiff Espindola as a food preparer.

56.    Plaintiff Espindola regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

57.    Plaintiff Espindola's work duties required neither discretion nor independent judgment.

58.    Throughout his employment with Defendants, Plaintiff Espindola regularly worked in excess of 40 hours per week.

59.    From approximately May 25, 2017 until on or about June 13, 2017, Plaintiff Espindola worked from approximately 11:00 a.m. until on or about 8:00 p.m. six days a week (typically 54 hours per week).

60.    However, for a period of one week, Plaintiff Espindola worked from approximately 12:30 p.m. until on or about 8:30 p.m. six days (approximately 48 hours).

61.    Throughout his employment with defendants, Plaintiff Espindola was paid his wages in cash.

62.    From approximately May 25, 2017 until on or about June 13, 2017, Defendants paid Plaintiff Espindola $11.00 per hour.

63.    Defendants failed to maintain an accurate recordkeeping system that would accurately reflect Plaintiff Espindola's actual hours worked.

64.    Furthermore, Defendants did not provide Plaintiff Espindola with a statement of wages with each payment of wages, as required by NYLL 195(3).

65.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Espindola regarding overtime and wages under the FLSA and NYLL.

66.    Defendants did not give any notice to Plaintiff Espindola, in English and in Mixteco (Plaintiff Espindola's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

67.    Defendants required Plaintiff Espindola to purchase "tools of the trade" with his own funds—including a bicycle and vest rental.

*Plaintiff Rigoberto Juarez Galindo*

68.    Plaintiff Juarez was employed by Defendants from approximately November 21, 2015 until on or about April 15, 2016, and from approximately September 5, 2016 until on or about June 18, 2017.

69.    Defendants employed Plaintiff Juarez as a delivery worker.

70.    Plaintiff Juarez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

71.     Plaintiff Juarez's work duties required neither discretion nor independent judgment.

72.     Throughout his employment with Defendants, Plaintiff Juarez regularly worked in excess of 40 hours per week.

73.     From approximately November 21, 2015 until on or about April 15, 2016, Plaintiff Juarez worked from approximately 4:00 p.m. until on or about 11:00 p.m. Tuesdays through Fridays, and from approximately 11:30 a.m. until on or about 11:00 p.m. Saturdays and Sundays (typically 51 hours per week).

74.     From approximately September 5, 2016 until on or about June 18, 2017, Plaintiff Juarez worked from approximately 2:30 p.m. until on or about 1:00 a.m. Mondays and Thursdays, from approximately 1:00 p.m. until on or about 11:00 p.m. on Tuesdays and from approximately 1:00 p.m. until on or about 9:00 p.m. Fridays through Sundays (typically 55 hours per week).

75.     Throughout most of his employment with defendants, Plaintiff Juarez was paid his wages in cash. In fact, only two or three times did Defendants pay Plaintiff Juarez his wages by personal check.

76.     From approximately November 21, 2015 until on or about April 15, 2016 and from approximately September 5, 2016 until on or about December 31, 2016, Defendants paid Plaintiff Juarez $9.50 per hour.

77.     From approximately January 2017 until on or about June 18, 2017, Defendants paid Plaintiff Juarez $10.50 per hour.

78.     Plaintiff Juarez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

79.     In fact, Defendants required Plaintiff Juarez to work two hours past his scheduled departure time twice a week, and did not compensate him for the additional hours he worked.

80.     From approximately November 21, 2015 until on or about December 2016, Defendants required Plaintiff Juarez to record his hours worked in a computer system.

81.     Defendants did not provide Plaintiff Juarez with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

82.     No notifications, either in the form of posted notices or other means, were ever given to Plaintiff Juarez regarding overtime and wages under the FLSA and NYLL.

83.     Defendants did not give any notice to Plaintiff Juarez, in English and in Spanish (Plaintiff Juarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

84.     Defendants required Plaintiff Juarez to purchase "tools of the trade" with his own funds—including two bicycles, two tires and two locks.

*Defendants' General Employment Practices*

85.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime and spread of hours pay as required by federal and state laws.

86.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

87.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

88.     Plaintiffs (except for Plaintiff Juarez on two or three occasions only) were paid their wages entirely in cash.

89.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

90.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

91.     Defendants employed Plaintiffs Pareja and Juarez as tipped workers and required them to provide their own tools for the job, and refused to compensate them or reimburse them for these expenses.

92.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

93.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers or tipped workers.

94.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

95.     Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

96.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

97.     Plaintiffs bring their FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

98.     At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

99.     At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay overtime at a rate of one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

100.     At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' willful failure to keep records required by the FLSA.

101.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE OVERTIME PROVISIONS
## OF THE FLSA

102.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

103.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour  in excess of forty hours in a work week.

104.     Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

105.     Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE OVERTIME PROVISIONS OF THE
## NEW YORK STATE LABOR LAW

106.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

107.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour  in excess of forty hours in a work week.

108.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

109.    Plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER
### OF THE NEW YORK COMMISSIONER OF LABOR

110.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

111.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-1.6

112.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

113.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE NOTICE AND RECORDKEEPING
### REQUIREMENTS OF THE NEW YORK LABOR LAW

114.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

115.    Defendants failed to provide Plaintiffs with a written notice, in English and in

Plaintiffs' primary languages, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the  minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

116.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW**

117.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

118.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

119.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**
**RECOVERY OF EQUIPMENT COSTS**

120.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

121.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

122.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(d)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(e)    Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid overtime wages and damages for any improper deductions or credits

taken against wages under the FLSA as applicable;

(f)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of overtime wages and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)     Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(i)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(j)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(k)     Awarding Plaintiffs damages for the amount of overtime wages and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(l)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(m)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total spread of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(n)    Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(o)    Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(p)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(q)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
July 21, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    /s/ Michael A. Faillace
       Michael Faillace, Esq. [MF-8436]
       60 East 42nd Street, suite 4510
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

June 19, 2017

BY HAND

To: Clerk of Court,

     I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:          Alberto Pareja

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:        June 19, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 19, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          **Lorenzo Espindola Israel**

                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                        19 de junio de 2017

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 19, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.

**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Rigoberto Juarez Galindo

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                    19 de junio de 2017

*Certified as a minority-owned business in the State of New York*